**FUTERFAS FAMILY PARTNERS,**
**Appellant**

**v.**

**Nathan K. GRIFFIN, as temporary Administrator of the Estate of Edward Lewis Von Hohn, II, Deceased, Appellee.**

**No. 05–11–00211–CV.**

Court of Appeals of Texas,
Dallas.

May 22, 2012.

Norman A. Zable, Dallas, TX, for Appellant.

J. Douglas Uloth, Addison, TX, Mary C. Burdette, Calloway, Norris, Burdette & Weber, Dallas, TX, for Appellee.

## OPINION

Opinion By Justice FILLMORE.

Futerfas Family Partners (Futerfas) sued Nathan K. Griffin, as Temporary Administrator of the Estate of Edward Lewis Von Hohn, II, Deceased (the Estate), seeking to recover on a personal guaranty. Futerfas appeals the trial court's grant of the Estate's motion for summary judgment and the denial of Futerfas's motion for summary judgment. We reverse the judgment and remand this case to the trial court for further proceedings.

### Background

Edward Lewis von Hohn (Edward) was a principal in Agora Entertainment Partners, L.L.P. (Agora). In August 2008, Agora leased one-half of a commercial building from Futerfas and agreed to pay rent of $10,000 per month for thirty-six months. On February 6, 2009, Edward died. On December 11, 2009, Agora and L & L Partners entered into "Amendment No. 1" pursuant to which the lease was extended for three months and Agora rented the other half of the building for a monthly rent of $7,500 (the Amendment).[1] Agora failed to pay all rent due on the lease, and Futerfas filed a claim with the Estate, asserting Edward had personally guaranteed the lease. The Estate rejected the claim, and Futerfas filed this lawsuit.

Futerfas filed a motion for summary judgment on the ground that Edward, and therefore the Estate, was liable on the alleged guaranty as a matter of law. As relevant summary judgment evidence, Futerfas attached (1) a North Texas Commercial Association of Realtors Commercial Lease Agreement between Futerfas and "Angora," (2) a landlord's lien filed by Futerfas, (3) an affidavit of Frank Lawrence Futerfas (Frank), one of the partners in Futerfas, and (4) an affidavit of Beau Ethridge.

Ethridge stated in his affidavit that he was a principal in Agora and met with Frank to discuss a possible lease. Ethridge and Edward then met with Frank to review the final draft of the lease. Both Edward and Frank initialed "a couple of minor changes" to the lease "at the time

---

1. Futerfas and Agora were the initial parties to the Amendment. However, "Futerfas Family Partners" is struck through and "L & L Partners" is handwritten on the Amendment and initialed by "L." In his deposition, Frank Lawrence Futerfas, a partner in Futerfas, testified that L & L Partners is a real estate holding partnership and is the owner of the property. Futerfas owns an interest in L & L Partners and acts as its agent. When asked why L & L Partners was substituted for Futerfas in the Amendment, Frank responded that "sometimes I forget who I'm doing business as" and "it's all the same to me." There is no issue in this appeal regarding any distinction between Futerfas and L & L Partners.

they both signed the lease agreement." Ethridge further stated that he questioned Edward "after he signed the Guarantee" about why the other principals of Agora were not named in the guaranty. Edward responded that he "was the lawyer and the financial partner and that he had agreed to sign the Guarantee."

In his affidavit, Frank stated that Edward signed and delivered a guaranty of Agora's obligations under the lease on August 28, 2008. Since Edward's death, Agora has not paid the required rent and was in arrears in the amount of $71,000.

The lease attached to Futerfas's motion for summary judgment was between Futerfas, as landlord, and "Angora," as tenant. The word "Angora" is struck through and "Agora Entertainment Partners, LLP" is handwritten on the lease to identify the tenant. An initial "L" appears beside the change and on every page of the lease. Section 16.16 of the lease addresses "Exhibits and Addenda" and states:

> Any exhibit or addendum attached to this Lease is incorporated as a part of this Lease for all purposes. Any term not specifically defined in the Addenda will have the same meaning given to it in the body of this Lease. To the extent any provisions in the body of this Lease conflict with the Addenda, the Addenda will control.
>
> *[Check all boxes that apply. Boxes not checked do not apply.]*

(emphasis in original). The box beside "Addendum E Guarantee" is checked.

Under "Additional" on the same page of the lease as section 16.16 is a paragraph that states:

> Landlord will provide finish out allowance of up to thirty-thousand dollars ($30,000.00), which will be reimbursed to tenant upon work being approved by landlord and upon receiving paid in-

voices and that all construction work meets city codes and ordinances *and meets with paragraph 6.03 provisions.* The italicized portion of the paragraph is a handwritten insert, and the initial "L" appears beside this change. The lease contains a signature for Edward on behalf of the tenant.

The Addenda to the lease are initialed at the bottom by "L" for the landlord and by "ELVH" for the tenant. "Addendum E Guarantee" to the lease has blanks for the address of the premises, the names of the landlord and the tenant, and the county in which the property is located. The signature block on Addendum E is filled in by hand, identifies Edward as the guarantor, and contains an illegible signature. Both the lease and the addendum are dated August 28, 2008.

The Estate responded to the motion for summary judgment and argued that Futerfas was not entitled to summary judgment because (1) the guaranty is insufficient under the statute of frauds, (2) the guaranty was discharged by material modification when Agora and L & L Partners entered the Amendment following Edward's death that expanded the leased premises and increased the total required rent, (3) Edward's death revoked any contractual waiver of, or consent to, a material alteration of the lease, and (4) Futerfas failed to prove damages. As summary judgment evidence, the Estate attached (1) an affidavit of Kirsten Howren, (2) Frank's deposition testimony stating Linda Linsey prepared a damages calculation, Agora owed rent of $57,500 through July 1, 2010, and Futerfas is not claiming from the Estate any rent due on the Amendment, and (3) the Amendment.

In her affidavit, Howren stated she is Edward's sister and assisted him in the administration of his business affairs. Edward left Dallas for England on August 22,

2008 and returned on September 2, 2008. On August 23, 2008, Howren exchanged email messages with Ethridge relating to Agora. Howren told Ethridge that she was still working on the lease and would get it finalized. Ethridge responded that "Mr. Futerfas" was concerned and "cracking down on Greg to get the lease signed." Ethridge also stated he believed the document "is in Ed's hands."

On August 24, 2008, Howren received a copy of the proposed lease and forwarded it to an attorney. On August 27, 2008, Howren communicated with Edward by text, and he instructed her to sign his name to the lease and return the signed document to Jason Kabolati, a principal in Agora. Based on the attorney's comments about the lease, Howren sent an email to Greg Cannon, Agora's broker, requesting changes to the lease. Cannon responded that the owner of the property had noted activity on the property and wanted it stopped because there was no lease. In response to Cannon's concerns, Howren placed the initials "ELVH" where indicated in the lease and the documents attached to the lease and signed Edward's name in two places where signatures were indicated. When Howren signed the lease, the only handwritten notation on the lease was Howren's change of "Angora" to "Agora Entertainment Partners, LLP." When Howren signed the lease, the box in section 16.16 incorporating "Addendum E Guarantee" was not checked.

Howren faxed the signed documents to Cannon and retained the original. Cannon responded that he would take the lease to the owner of the property for review. After Edward's death, Howren found in his records a check to Larry Futerfas for $30,000. Attached to the check was a lease signed by Edward. This lease misnames the tenant as "Angora" without a handwritten correction. "EH," as opposed to "ELVH," is initialed on the addenda to the lease. The box incorporating "Addendum E Guarantee" is not checked. Further, although Addendum E is initialed at the bottom, the blanks have not been filled in, the signature block is not completed, and the addendum is not signed.

Furterfas filed a supplement to its motion for summary judgment, attaching an affidavit of Kabolati and an affidavit of Linda Linsey. Kabolati stated that he was a principal in Agora and, along with the other principals, decided to lease the property. Cannon submitted several drafts of the proposed lease for the principals to review. In August 2008, Edward and Ethridge met with Frank to review the final draft of the lease. Edward returned from the meeting with a copy of the lease and gave it to Kabolati. Edward also told Kabolati that Edward had guaranteed the lease. Kabolati gave the lease to Agora's accountant for filing.

Attached to Kabolati's affidavit is a copy of the lease he received from Edward. This lease has the same handwritten changes as the lease attached to Futerfas's motion for summary judgment. The addenda are initialed "ELVH." As with the lease attached to Futerfas's motion for summary judgment, Addendum E is signed, but not completed. However, on this copy of the lease, the box in the lease incorporating "Addendum E Guarantee" is not checked.

Linsey stated that she is a partner in L & L Partners, the owner of the property. As an agent for L & L, Futerfas rented the property to Agora. Linsey is responsible for maintaining the books and records on the property. According to Linsey, after Edward's death, Agora failed to pay rent for the months of July 2009 and February through July 2010. The total amount of unpaid rent was $57,500 and

rent continued to accrue at the rate of $10,000 per month.

The Estate filed a motion for summary judgment on grounds the guaranty was discharged by a material alteration of the lease entered into after Edward's death and Edward's death revoked any contractual waiver or consent to a material alteration of the lease. It relied on the summary judgment evidence it submitted in opposition to Futerfas's motion for summary judgment. Futerfas responded to the Estate's motion, also relying on the summary judgment evidence already submitted.

The trial court granted the Estate's motion for summary judgment and denied Futerfas's motion for summary judgment.

### Standard of Review

We review the grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex.2010). A summary judgment under rule of civil procedure 166a(c) is properly granted when the movant establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 373 (Tex.App.-Dallas 2011, no pet.). In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex.2008).

When, as here, both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Guynes v. Galveston Cnty.*, 861 S.W.2d 861, 862 (Tex. 1993); *Mira Mar Dev. Corp. v. City of Coppell*, 364 S.W.3d 366, 375–76 (Tex.App.-

Dallas 2012, no pet. h.). "Neither party can prevail because of the other's failure to discharge its burden." *Mira Mar Dev. Corp.*, 364 S.W.3d at 375. When the trial court grants one motion and denies the other, we review both parties' summary judgment evidence, determine the questions presented, and render the judgment the trial court should have rendered. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Mira Mar Dev. Corp.*, 364 S.W.3d at 375–76.

### Analysis

■ In two issues, Futerfas asserts the trial court erred by denying its motion for summary judgment and granting the Estate's motion for summary judgment because Futerfas established the Estate was liable on the guaranty as a matter of law and the Estate failed to establish its defenses as a matter of law. "A guaranty creates a secondary obligation whereby the guarantor promises to answer for the debt of another and may be called upon to perform once the primary obligor has failed to perform." *Anderton v. Cawley*, 378 S.W.3d 38, 46, 2012 WL 1606665 (Tex. App.-Dallas 2012, no pet. h.) (quoting *Dann v. Team Bank*, 788 S.W.2d 182, 183 (Tex.App.-Dallas 1990, no writ)). To recover under a guaranty, a claimant must prove (1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract, (3) the occurrence of the conditions upon which liability is based, and (4) the guarantor's failure or refusal to perform the promise. *Id.; Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex.App.-Dallas 1994, no writ).

■ The summary judgment evidence showed the existence of numerous forms of the lease. According to Howren, Edward signed the copy of the lease attached to a check made payable to Larry Futerfas.

This lease contains the initials "EV" on the addenda pages. Although Edward signed this lease and initialed at the bottom of "Addendum E Guarantee," he did not sign the guaranty and the guaranty is not completed. Further, the box in the lease incorporating the guaranty is not checked.

Howren also stated it is her signature on the lease with the initials "ELVH" on the addenda pages. As with the lease initialed "EV," the blanks on Addendum E have not been completed. Although Howren signed Addendum E, her copy of the lease does not have the appropriate box checked to incorporate the guaranty into the lease. However, the copy of this lease offered by Futerfas has the box checked, incorporating the guaranty into the lease. Kabolati also had a copy of this lease in his file that he claimed to have received from Edward. On Kabolati's copy, the box incorporating the guaranty into the lease is not checked.

Kabolati testified he had a discussion with Edward during which Edward indicated he had signed the guaranty. Both Ethridge and Frank testified that Edward signed the lease and guaranty in their presence. According to Frank, this occurred on August 28, 2008. Howren, however, stated Edward was not in the country on August 28, 2008. Further, the lease that Frank claims Edward signed is the one that Howren swears she signed on Edward's behalf.

Based on the numerous versions of the lease in the record and the conflicting evidence about when, and by whom, the lease was signed and whether the guaranty was incorporated into the lease, we conclude there is a material issue of fact regarding the existence of a guaranty. Accordingly, Futerfas failed to establish it was entitled to recover on the guaranty as a matter of law, and the trial court did not err by denying Futerfas's motion for summary judgment.

We next turn to whether the trial court properly granted summary judgment for the Estate based on (1) the guaranty being discharged due to a material alteration to the lease or (2) Edward's death having the effect of revoking any contractual waiver of, or consent to, a material alteration of the lease. Both of the grounds on which the Estate sought summary judgment required it to establish a material alteration of the lease.

A guarantor may require that the terms of his guaranty be strictly followed, and the guaranty may not be extended by construction or implication beyond the precise terms of the contract. *Reece v. First State Bank of Denton*, 566 S.W.2d 296, 297 (Tex.1978); *Marshall*, 878 S.W.2d at 631; *Beal Bank, SSB v. Biggers*, 227 S.W.3d 187, 192 (Tex.App.-Houston [1st Dist.] 2007, no pet.). A guarantor is discharged by a material alteration of the underlying contract that lacks the consent of the guarantor and harms the guarantor. *Beal Bank, SSB*, 227 S.W.3d at 192; *Austin Hardwoods Inc. v. Vanden Berghe*, 917 S.W.2d 320, 325 (Tex.App.-El Paso 1995, writ denied); *see also McKnight v. Va. Mirror Co.*, 463 S.W.2d 428, 430 (Tex. 1971). A material alteration is an alteration of the underlying contract between a creditor and principal debtor that either injures or enhances the risk of injury to the guarantor. *United Concrete Pipe Corp. v. Spin–Line Co.*, 430 S.W.2d 360, 365–66 (Tex.1968); *Fed. Deposit Ins. Corp. v. Attayi*, 745 S.W.2d 939, 944 (Tex.App.-Houston [1st Dist.] 1988, no writ). To be entitled to discharge from liability on the guaranty, the guarantor must prove (1) a material alteration of the underlying contract; (2) made without the guarantor's consent; (3) which is to the guarantor's detriment. *Vastine v. Bank of Dallas*, 808 S.W.2d 463, 464–65 (Tex.1991) (per curiam); *Byboth v. Wood Ltd. P'ship*, No.

05–08–00915–CV, 2009 WL 1416768, at *2 (Tex.App.-Dallas May 21, 2009, pet. denied) (mem. op.).

Futerfas seeks to recover from the Estate based solely on an alleged guaranty by Edward of the payment of rent due on the half of the building initially rented by Agora, not the half of the building subject to the Amendment. The Estate argues, however, that Agora's decision to rent the second half of the building increased its total rent obligation to Futerfas. The Estate contends that because the Amendment increased the risk Agora would default on its rent obligation on the half of the building subject to the alleged guaranty, it was a material alteration that released Edward, and therefore the Estate, from the guaranty.

The Estate submitted no summary judgment evidence that Agora's entering into the Amendment, as opposed to any other business decision, caused Agora to default on its obligations under the lease. Accordingly, the Estate failed to meet its summary judgment burden of proving that the Amendment injured or enhanced the risk of injury to the Estate. Because the Estate failed to establish, as a matter of law, that the Amendment was a material alteration of the lease, the trial court erred by granting summary judgment for the Estate. *See Travelers Indem. Co. v. Dahlen,* 734 S.W.2d 729, 732–33 (Tex.App.-Dallas 1987, writ ref'd n.r.e.) (reversing summary judgment because fact issue existed on whether modification was material).

We reverse the trial court's judgment in favor of the Estate and remand this case to the trial court for further proceedings.