# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00315-CV

**Jadon F. Newman, Appellant**

**v.**

**Firstmark Credit Union, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-13-000808, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jadon F. Newman appeals from the trial court's summary judgment in favor of Firstmark Credit Union. Firstmark sued Newman on a guaranty on a lending agreement. Newman asserted affirmative defenses and counterclaims. The trial court granted Firstmark's motion for summary judgment on its claims and Newman's counterclaims. For the reasons that follow, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Firstmark is a nonprofit credit union whose membership consists largely of educators who live in Bexar County. Newman was the manager of NCFM, LLC, a commercial mortgage banker that loaned money to borrowers secured by their commercial real estate. In September 2008,

NCFM obtained funding from Firstmark for a warehouse line of credit.[1]  The parties' relationship was governed by a series of documents, including a Promissory Note in the amount of $5 million, a Commercial Loan Agreement, an Assignment of Note, and a Disclaimer of Oral Agreements. Thus, the agreement between Firstmark and NCFM was a $5 million warehouse line of credit, secured by the Note, that was in turn secured by the Assignment of the borrowers' promissory notes. Attached as Exhibit A to the Loan Agreement was a list of items required for a draw request.  In addition, Newman signed a Guaranty guaranteeing the Loan, the Note, any other debt incurred, and related expenses.  NCFM drew against the Note in a series of transactions totaling approximately $11 million and made commercial mortgage loans to borrowers—although the parties dispute whether it did so in compliance with the terms of the loan documents.  NCFM repaid all but $748,964.55 of the principal loan amount.  In the fall of 2009, Firstmark revised the checklist and began requiring NCFM to assign to it the borrowers' first lien deeds of trust.  NCFM complied with this requirement.  NCFM defaulted on the Note in late 2009 and in 2010 filed for bankruptcy under Chapter 11.

In March 2013, after conducting multiple foreclosures and participating in two adversary proceedings in the bankruptcy court, Firstmark filed suit against Newman seeking recovery on the Guaranty.  Newman filed a general denial, and approximately three months later, Firstmark filed a traditional motion for summary judgment with supporting evidence.  In June 2013, prior to a hearing on the motion, the parties entered into a Rule 11 agreement to postpone the hearing and

---

[1] "A warehouse line of credit refers to a sum of money that large financial institutions set aside for the purpose of making loans to smaller financial institutions." *Flagstar Bank, FSB v. Walker*, 451 S.W.3d 490, 494 n.1 (Tex. App.—Dallas 2014, no pet.).

conduct informal discovery. The parties dispute whether Firstmark complied with the Rule 11 agreement as to discovery. On October 18, 2013, Newman filed an amended answer and asserted affirmative defenses and counterclaims. Firstmark filed an amended motion for summary judgment with additional evidence. Newman filed a response and attached evidence consisting of his affidavit and exhibits. Each party objected to portions of the other's summary judgment evidence. The trial court overruled Newman's objections—with one exception not relevant to this appeal—sustained Firstmark's objections, and granted Firstmark's motion for summary judgment. The judgment awarded the principal amount of $748,964.55; accrued interest in the amount of $2,013,797.86; fees for late payment, appraisals, and accounting in the amount of $139,539.60; and attorney's fees in the amount of $85,000. Newman filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## STANDARD OF REVIEW

We review the trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). When the trial court does not specify the grounds for granting the motion, we must uphold the judgment if any of the grounds asserted in the motion and preserved for appellate review is meritorious. *Knott*, 128 S.W.3d at 216. Newman's issues also involve matters of contract construction. Our primary concern in construing a contract is to ascertain and give effect to the intent of the parties as expressed in the instrument. *Frost Nat'l Bank*

*v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005) (per curiam). We must not look to isolated terms but are to consider the instrument as a whole. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."). When the provisions of a contract appear to conflict, we must attempt to harmonize and give effect to all of the terms so that no part will be rendered meaningless. *Dorsett*, 164 S.W.3d at 662; *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Dorsett*, 164 S.W.3d at 662.

## DISCUSSION

### Refusal to Continue Hearing

In his third issue, Newman argues that the trial court erred by refusing to continue the hearing on the motion for summary judgment for discovery to be conducted. We review a trial court's denial of a motion for continuance for abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). However, the record reflects that Newman did not file a motion for continuance or otherwise present such a request to the court. Instead, counsel for Newman appeared at the hearing and presented argument without any indication that he was not prepared to proceed. Newman did assert in his response to Firstmark's motion for summary judgment that the motion was "premature" and that Firstmark had refused discovery, and he requested that the motion "be denied or continued until [Newman] has had adequate time to conduct

4

discovery on [certain] issues . . . ." However, even were we to construe this assertion as a purported motion for continuance, it was insufficient under Rules 251 and 252. *See* Tex. R. Civ. P. 251, 252. Rule 251 provides, in relevant part, that no continuance shall be granted "except for sufficient cause supported by affidavit." *See id.* R. 251. Although there were two affidavits attached to Newman's response, neither was offered in support of a continuance. In addition, under Rule 252, "[a] motion for continuance seeking time for discovery must be supported by an affidavit that describes the evidence sought, explains its materiality, and *shows that the party requesting the continuance has used due diligence to timely obtain the evidence.* The affidavit of diligence must state with particularity what diligence was used; conclusory allegations of diligence are not sufficient." *Landers v. State Farm Lloyds*, 257 S.W.3d 740, 747 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (internal citations omitted) (emphasis in original). Newman offered no such affidavit or evidence. In the absence of a proper motion for continuance, we conclude that the trial court did not abuse its discretion in failing to continue the hearing for additional discovery.[2] We overrule Newman's third issue.

**Exclusion of Evidence**

In his second issue, Newman argues that the trial court erred in sustaining Firstmark's objections to Newman's summary judgment evidence. We review a trial court's exclusion of

---

[2] Even if we were to construe Newman's response as sufficient under Rules 251 and 252, we would still conclude that the trial court did not abuse its discretion. Firstmark presented sworn evidence that it had complied with the parties' Rule 11 agreement regarding discovery, and the record reflects that Newman never served any formal discovery requests on Firstmark during the ten months the case had been pending prior to the hearing on Firstmark's motion for summary judgment.

evidence for abuse of discretion. *Waste Mgmt. of Tex., Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 157 (Tex. 2014). Exclusion of evidence, even if erroneous, is harmless unless the error probably caused rendition of an improper judgment or probably prevented the appellant from presenting the case on appeal. *See* Tex. R. App. P. 44.1(a); *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 667 (Tex. 2009). In support of his response to Firstmark's motion for summary judgment, Newman filed an affidavit in which he testified regarding warehouse lending procedures, the parties' negotiations prior to and discussions following execution of the loan documents, the contents of the loan documents, alleged admissions by Firstmark, and damages. Firstmark objected to Newman's testimony on each of these subjects. Prior to the hearing, Newman filed a supplemental affidavit curing some, but not all, of Firstmark's objections.

Assuming without deciding that some or all of Firstmark's objections were erroneously sustained, Newman has failed to show that the exclusion of portions of his affidavit was harmful error. Newman's only arguments with regard to reversible error are that all of the errors asserted in his brief are reversible because Firstmark "blocked [him] from securing evidence" and the trial court "denied [him] a jury trial on every aspect of his case." Newman makes no attempt to establish how the trial court's exclusion of his affidavit testimony probably caused the rendition of an improper judgment or probably prevented him from presenting his case on appeal. *See* Tex. R. App. P. 44.1(a); *Castillo*, 279 S.W.3d at 667. We overrule Newman's second issue.

**Summary Judgment on Firstmark's Breach of Guaranty Claim**

In his fourth issue, Newman asserts that the trial court erred in granting summary judgment on the merits of Firstmark's guaranty claim because Firstmark did not conclusively prove

6

the elements of its claim. The elements of a breach of guaranty claim are: (1) the existence and ownership of the guaranty; (2) performance of the underlying contract; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor. *Vince Poscente Int'l, Inc. v. Compass Bank*, 460 S.W.3d 211, 214 (Tex. App.—Dallas 2015, no pet.). Newman disputes only the second and fourth elements, arguing that Firstmark has not established its performance or his failure to perform because the loan documents were incomplete and ambiguous. This argument is predicated on his contention that the documents were silent as to Firstmark's right to require assignment of the first lien deeds of trust. According to Newman, the absence of specific language in the loan documents to that effect creates a fact issue and precludes summary judgment.

Although Newman did not argue ambiguity in the trial court, this Court may consider ambiguity of a contract raised for the first time on appeal. *See Progressive Cnty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 808–09 (Tex. 2009) (per curiam) (concluding contract ambiguous where neither party asserted ambiguity); *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993) (holding that court can decide contract is ambiguous on its own motion). Newman contends that "without expressly asserting 'ambiguity,' a crux of this dispute is the parties' different interpretations of the Agreement." However, "ambiguity does not arise simply because the parties advance conflicting interpretations of the contract." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Only where a contract is first found to be ambiguous may the courts consider the parties' interpretations. *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981). Where the meaning of the contract is plain and unambiguous,

a party's construction is immaterial. *Id.* Therefore, Newman's and Firstmark's differing constructions of the loan documents do not make them ambiguous, and we conclude that they are not ambiguous. *See Kelley*, 284 S.W.3d at 808 (holding whether contract is ambiguous is question of law to be decided by court).

Newman also contends that we may consider as evidence of ambiguity representations concerning who was to retain the deeds of trust allegedly made by Firstmark during negotiations prior to execution of the loan documents and Firstmark's actions after execution of the documents. However, we may consider surrounding circumstances and extrinsic evidence only if we find the agreement to be ambiguous; they may not be considered to introduce ambiguity. *See Exxon Corp. v. West Tex. Gathering Co.*, 868 S.W.2d 299, 302 (Tex. 1993) (stating that where contract is unambiguous, courts give effect to intention of parties as expressed in writing and interpret contract as matter of law); *Madeley*, 626 S.W.2d at 732 (parol evidence not admissible to render ambiguous contract capable of being given definite legal meaning); *Zapata Cnty. Appraisal Dist. v. Coastal Oil & Gas Corp.*, 90 S.W.3d 847, 852 (Tex. App.—San Antonio 2002, pet. denied) (parol evidence rule precludes consideration of extrinsic evidence that contradicts, varies, or adds to terms of unambiguous written agreement). Further, we agree with Firstmark that Newton's ambiguity argument is essentially a restatement of his arguments concerning his affirmative defense of material alteration of the guaranty. As explained more fully in our discussion of that issue below, we conclude that the loan documents contain language authorizing Firstmark to require assignment of deeds of trust and that Firstmark did not materially alter the parties' agreement by doing so. We overrule Newman's fourth issue.

**Summary Judgment on Newman's Affirmative Defenses**

In his fifth issue, Newman argues that the trial court erred in granting summary judgment in favor of Firstmark because he raised a fact issue as to each of his affirmative defenses of material alteration, equitable estoppel, waiver, and quasi-estoppel.[3] However, in his response to Firstmark's motion for summary judgment, Newman substantively raised only material alteration.[4] "[I]ssues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion and are not expressly presented by mere reference to summary judgment evidence." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *see Murray v. Pinnacle Health Facilities XV*, No. 01-13-00527-CV, 2014 Tex. App. LEXIS 7642, at *6 (Tex. App.—Houston [1st Dist.] July 15, 2014, pet. denied) (mem. op.) (same, citing *McConnell*). Therefore, Newman has waived his arguments as to his affirmative defenses other than material alteration. *See McConnell*, 858 S.W.2d at 341; *Murray*, 2014 Tex. App. LEXIS 7642, at *6. We turn, then, to that issue.

Because courts strictly construe guaranties and because guarantors are bound only by the precise terms of the contract they have secured, a guarantor may be discharged by the material alteration of a contract between the principal debtor and the creditor. *Vastine v. Bank of Dallas*, 808 S.W.2d 463, 464–65 (Tex. 1991) (per curiam); *Futerfas Family Partners v. Griffin*,

---

[3] In his amended answer, Newman also asserted the affirmative defenses of waiver and release, modification of obligation, payment, equitable estoppel, quasi-estoppel, failure of consideration, fraud, failure to mitigate, discharge, accord and satisfaction, impairment of subrogation, impairment of collateral, and voidable contract.

[4] In the conclusion and prayer of his response, Newman asserted that Firstmark had "refuse[d] to allow him time to investigate . . .[and] develop [his affirmative defenses]." However, material alteration is the only affirmative defense on which he offered any argument.

374 S.W.3d 473, 478 (Tex. App.—Dallas 2012, no pet.); *FDIC v. Attayi*, 745 S.W.2d 939, 944 (Tex. App.—Houston [1st Dist.] 1988, no writ).  A material alteration is an alteration of the underlying contract that lacks the consent of the guarantor and either injures the guarantor or enhances the risk of injury to the guarantor.  *Griffin*, 374 S.W.3d at 478; *Attayi*, 745 S.W.2d at 944.  To establish material alteration, a guarantor must show (1) a material alteration of the underlying contract, (2) made without his consent, (3) to his detriment.  *Brauss v. Triple M Holding GmbH*, 411 S.W.3d 614, 626 (Tex. App.—Dallas 2013, pet. denied) (citing *Griffin*, 374 S.W.3d at 478–79).

Newman argues that more than a scintilla of evidence shows that Firstmark materially changed the underlying agreement with NCFM by requiring assignment of the deeds of trusts.  He contends that neither the Loan Agreement nor the checklist for making draws required assignment of the deeds of trust and that Firstmark did not require them at first.  Newman further contends that the deeds of trust were NCFM's "separate property" and that Firstmark "improperly took" them in the name of requiring "additional documents," prejudicing NCFM's and Newman's interests.  He also argues that because an assignment is a contract between the assignor and assignee, the assignments of the deeds of trust were not "additional documentation."  We do not find these arguments persuasive.

In the Loan Agreement, NCFM agreed to "sign, deliver, and file any additional documents or certifications that [Firstmark] may consider necessary to perfect, continue, and preserve [Newman's] obligations under this Loan and to confirm [Firstmark's] status on any Property."  Assignments of the deeds of trust fall into this broad category.  Morever, the Loan Agreement left the determination of what additional documents were needed entirely to Firstmark's

10

discretion. In addition, the Assignment of Note provided that NCFM assigned a security interest to Firstmark in "all of the Property described in this Agreement . . . and all . . . proceeds . . . of the Property." Property was defined as the collateral given as security for the debt and "include[d] all obligations that support the payment or performance of the Property." "Proceeds" was defined as including "any rights and claims arising from the Property." Deeds of trust that created the liens on the borrowers' properties, which served as collateral for the assigned notes and which would not have existed in the absence of the notes, "support the payment" of or "arise from" the notes. In the Assignment of Note, NCFM further agreed to "deliver any . . . documents or instruments evidencing the" collateral, to "execute all items as necessary to reflect [Firstmark's] security interest," and to "do whatever [Firstmark] required to protect [Firstmark's] security interest." Therefore, both the Loan Agreement and the Assignment of Note support the right of Firstmark to require NCFM to assign the deeds of trust, and that requirement was not a material alteration. *See Griffin*, 374 S.W.3d at 478; *Attayi*, 745 S.W.2d at 944.

While assignments are considered contracts between the assignor and assignee, *see D Design Holdings, L.P. v. MMP Corp.*, 339 S.W.3d 195, 200–01 (Tex. App.—Dallas 2011, no pet.), we are not convinced that the assignments of the deeds of trust were separate contracts, as Newman argues. Rather, they were "additional documentation" executed as Firstmark determined necessary to "perfect, continue, and preserve" Firstmark's existing liens on its existing collateral under the loan documents. They "arise from" the assigned notes and would not have existed but for the notes. "Under generally accepted principles of contract interpretation, all writings that pertain to the same transaction will be considered together, even if they were executed at different times and

11

do not expressly refer to one another." *Id.* at 201. Construing all of the loan documents together, harmonizing them, and assuming the parties intended every provision to have some effect, we conclude that the assignments of the deeds of trust were contemplated and that Firstmark was authorized to require them as additional documentation in its discretion. *See Dorsett*, 164 S.W.3d at 662; *D Design Holdings*, 339 S.W.3d at 202 (construing contract and assignment together and holding that assignment applied to rents already accrued as well as to rents to accrue in future despite lack of express reference to rents accrued in past).

Even if we were to construe the assignments of the deeds of trust as separate contracts, Newman offers no authority for the proposition that written contracts such as assignments are not "documents" that Firstmark, in its discretion under the terms of the Loan Agreement, could require.[5] Nor does he cite any authority that supports his argument that the deeds of trust were NCFM's "separate property."[6] In fact, if the deeds of trust were NCFM's property, NCFM would have been able to foreclose on the deeds of trust and deprive Firstmark of collateral to secure the notes. *See Morlock, L.L.C. v. Bank of N. Y.*, 448 S.W.3d 514, 518 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) (referring to severability of note and deed of trust and rule that deed of trust may be enforced by mortgagee regardless of whether mortgagee also holds note). Construing the loan

---

[5] Newman cites *D Design Holdings, L.P. v. MMP Corp.*, 339 S.W.3d 195, 200–01 (Tex. App.—Dallas 2011, no pet.), which holds that an assignment is a contract but does not hold that an assignment is not a "document" or cannot be "additional documentation."

[6] Newman's reliance on *Stephens v. LPP Mortgage, Ltd.*, 316 S.W.3d 742, 747 (Tex. App.—Austin 2010, pet. denied) in support of his argument that the deeds of trust were NCFM's "separate property" constituting "separate bundles of rights" is misplaced. In *Stephens*, this Court merely reaffirmed the principle that a creditor can file suit to establish liability on a promissory note without waiving its right to foreclose later under the deed of trust. *See id. Stephens* offers no support for Newman's contention that the deeds of trust were NCFM's "separate property."

documents as a whole, we cannot conclude that the parties intended such a result. *See Frost Nat'l Bank*, 165 S.W.3d at 311–12; *Crews*, 898 S.W.2d at 789. As for the checklist of items required for a draw request, although it did not expressly include assignment of deeds of trust, it did include a requirement for "Assignment of Lien" for "Existing Notes Receivables," and there is nothing in the loan documents to indicate the checklist could not be expanded. Firstmark does not dispute that it did not originally require assignment of the deeds of trust; however, the Loan Agreement provided that Firstmark's forbearance from the exercise of any of its rights under the agreement did not constitute waiver of those rights. We conclude that Newman did not create a genuine issue of material fact as to his affirmative defense of material alteration and overrule Newman's fifth issue.

**Summary Judgment on Newman's Counterclaims**

In his sixth issue, Newman argues that Firstmark did not conclusively negate an essential element of all of Newman's counterclaims or prove every element of its affirmative defenses to his counterclaims. Newman asserted counterclaims for fraud in the inducement, fraud by nondisclosure, and negligent misrepresentation and sought a declaratory judgment that the Guaranty is void.[7] Firstmark asserted by way of affirmative defense, and argues on appeal, that the counterclaim for negligent misrepresentation is barred by the applicable statute of limitations and that the fraud-based counterclaims are precluded by Newman's disclaimer of reliance in the Guaranty. We agree.

---

[7] Although Newman states that he also asserted a counterclaim for tortious interference, the record contains no evidence that he filed such a counterclaim. Further, the record reflects that he asserted a counterclaim for an accounting, which he does not raise on appeal. Newman has therefore waived his complaints on appeal as to these counterclaims. *See* Tex. R. App. P. 33.1, 38.1(i).

13

*Negligent Misrepresentation*

Newman alleged that Firstmark made material representations concerning its experience in warehouse lending and who would hold the deeds of trust on which he relied when he agreed to sign the Guaranty. The statute of limitations for negligent misrepresentation is two years. Tex. Civ. Prac. & Rem. Code § 16.003(a); *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011). The representations forming the basis of Newman's counterclaims—on which he alleges he relied in entering the agreement—necessarily occurred on or before the date the loan documents were executed, which was September 9, 2008. Newman filed his counterclaims on October 18, 2013, more than five years after the date of the alleged misrepresentations. His counterclaim for negligent misrepresentation is therefore barred by the statute of limitations, *see Exxon Corp.*, 348 S.W.3d at 202, and the trial court did not err in granting summary judgment in favor of Firstmark on Newman's counterclaim for negligent misrepresentation.

*Fraud in the Inducement and Fraud by Nondisclosure*

In his fraudulent inducement counterclaim, Newman alleged that Firstmark made material representations to induce him to guarantee the NCFM loan but did not specify the alleged misrepresentations. In his fraud by nondisclosure counterclaim, Newman alleged that Firstmark failed to disclose its lack of experience with commercial warehouse lending. The statute of limitations for a fraud action is four years. Tex. Civ. Prac. & Rem. Code § 16.004(a)(4); *Exxon Corp.*, 348 S.W.3d at 202, 216. The statute of limitations for fraud begins to run from the time the party knew of the misrepresentation. *Exxon Corp.*, 348 S.W.3d at 216. Newman argues that his fraud claims did not accrue until less than four years before he asserted his claims. Although

14

Firstmark disputes that argument, it also contends that the fraud-based counterclaims are nonetheless barred by the disclaimer of reliance contained in the Guaranty. Assuming without deciding that the statute of limitations does not bar Newman's fraud claims, we agree with Firstmark that the disclaimer of reliance does.

Reliance by the party asserting fraud is an element of both fraudulent inducement and fraud by nondisclosure. *See In re International Profit Assocs., Inc.*, 274 S.W.3d 672, 678 (Tex. 2009) (orig. proceeding) (per curiam) (fraudulent inducement); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997) (fraud by nondisclosure); *Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 409 (Tex. App.—Dallas 2014, no pet.) (fraud by nondisclosure). A party to a transaction may contractually agree to waive reliance on another party's statements. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 332 (Tex. 2011). "The contract and the circumstances surrounding its formation determine whether the disclaimer of reliance is binding." *Schlumberger*, 959 S.W.2d at 179. To be enforceable, a contractual disclaimer of reliance must contain language that is clear and unequivocal. *Italian Cowboy Partners*, 341 S.W.3d at 331, 333–34, 336. This is a threshold requirement; if it is not satisfied, the disclaimer is invalid. *Id.* at 331–36 & n.8. If the clarity requirement is satisfied, four extrinsic factors are considered: whether (1) the terms of the contract were negotiated rather than boilerplate, and during negotiations the parties specifically discussed the issue that has become the topic of the subsequent dispute; (2) the complaining party was represented by counsel; (3) the parties dealt with each other at arms' length; and (4) the parties were knowledgeable in business matters. *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60 (Tex. 2008) (clarifying factors that should guide decision on

15

enforceability of disclaimer of reliance); *Texas Standard Oil & Gas, L.P. v. Frankel Offshore Energy, Inc.*, 394 S.W.3d 753, 763 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (discussing Texas Supreme Court's clarification in *Forest Oil* of factors to be considered). Whether a disclaimer of reliance is adequate to negate assertion of fraud as a defense is a question of law. *Italian Cowboy Partners*, 341 S.W.3d at 333; *Leibovitz v. Sequoia Real Estate Holdings, L.P.*, No. 05-14-00125-CV, ___ S.W.3d ___, 2015 Tex. App. LEXIS 5512, at *16–17 (Tex. App.—Dallas May 29, 2015, no pet. h.).

A clear and unequivocal disclaimer of reliance generally contains a form of the word "rely." *See, e.g.*, *Forest Oil*, 268 S.W.3d at 57, 60 (disclaimer of reliance containing word "relying" was clear and unequivocal); *Berry v. Encore Bank*, No. 01-14-00246-CV, 2015 Tex. App. LEXIS 5551, at *26 (Tex. App.—Houston [1st Dist.] June 2, 2015, no pet. h.) (mem. op.) (same). Here, the Guaranty contained the following provision:

> [Newman] further represent[s] and warrant[s] that [Newman has] not relied on any representations or omissions from [Firstmark] or any information provided by [Firstmark] respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow, or the Borrower's use and intended use of all Debt proceeds.

Thus, the terms of the Guaranty clearly and unequivocally state that Newman waived reliance on any representation or omissions by Firstmark.

The first extrinsic factor asks whether the terms of the Guaranty were negotiated. In his counterclaim, Newman stated that the loan documents were executed "after more than four months of negotiation." Newman's own statement indicates that substantial negotiations as to the

16

terms of the loan documents occurred. Therefore, the record reflects that the terms of the agreement were negotiated and were not merely boilerplate. As for the second prong of this factor, there was no summary judgment evidence concerning whether the parties "discussed the issue[s] that ha[ve] become the topic of subsequent dispute." *See Forest Oil*, 268 S.W.3d at 60 (identifying as second prong whether parties specifically discussed issue that has become topic of subsequent dispute). The topics of dispute were who, under the terms of the loan documents, was to retain the deeds of trust and whether Firstmark failed to disclose its lack of experience in warehouse lending. Newman's only allegations regarding who was to retain the deeds of trust were contained in his negligent misrepresentation counterclaim, which is barred by the statute of limitations. Consequently, this factor weighs in favor of enforcement, at least as to Newman's claims regarding the deeds of trust, the central issue in this case.

The next factor asks whether the guarantor was represented by counsel. There is no indication in the record that Newman was represented by counsel. This factor therefore weighs in favor of Newman. *See Berry*, 2015 Tex. App. LEXIS 5551, at *26 (where there was no evidence in record as to whether parties negotiated terms, factor weighed in favor of guarantor). Next we consider whether the loan documents resulted from an arms' length transaction. Newman is an experienced commercial mortgage lender, and Firstmark is an established credit union. The parties' agreement was a $5 million transaction. It appears from the record that all aspects of the transaction were consistent with an arms' length relationship. This factor weighs in favor of enforcement of the disclaimer. The final factor is whether Newman was knowledgeable in business matters. Newman

17

was the manager of NCFM, a commercial mortgage lender, and was experienced in warehouse lending, the type of transaction at issue. This factor weighs in favor of enforcement.

In sum, two of the four extrinsic factors favor enforcement, and a third favors enforcement at least in part. "[I]t is unnecessary to satisfy each factor when the parties' intent to preclude a fraud claim is clear and unequivocal and a sufficient number of factors are satisfied to meet the public policy concerns expressed in *Schlumberger* and its progeny." *Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 384 (Tex. App.—Houston [1st Dist.] 2012, pet. granted, judgm't vacated w.r.m.).[8] This was a commercial transaction between sophisticated parties who negotiated at arms' length an agreement that contained a clear and unequivocal disclaimer. The clarity of the disclaimer and the sophistication of the parties meet the public policy concern that a party be able to understand the terms of the disclaimer. *See id.* at 385 (stating that factors of clarity, sophistication, and representation by counsel focus on public policy concern that party be able to understand terms of disclaimer). The arms' length transaction and the negotiation of terms address the public policy concern that a party be able "to alter the disclaimer's terms so that a party voluntarily surrenders its rights to a fraud claim." *Id.*; *see Forest Oil*, 268 S.W.3d at 58 (enforcing "freely negotiated" disclaimer); *Schlumberger*, 959 S.W.2d at 179 (stating that parties should be able to "bargain for" agreement that precludes further disputes between them). Therefore, we conclude that the totality of circumstances supports enforcing the disclaimer and that Newman contractually disclaimed reliance on any representations or omissions made by Firstmark regarding its experience

---

[8] *See* Tex. R. App. P. 56.3 (noting that intermediate appellate opinions retain precedential value even if case is dismissed as result of settlement following filing of petition for discretionary review unless order of Texas Supreme Court specifically provides otherwise).

or the terms of the loan documents so as to preclude his counterclaims for fraudulent inducement and fraud by nondisclosure. *See Forest Oil*, 268 S.W.3d at 61 (concluding that where all factors were present, disclaimer of reliance precluded fraudulent inducement claim); *Berry*, 2015 Tex. App. LEXIS 5551, at *28–29 (upholding summary judgment in favor of guarantee on claim of negligent misrepresentation where three of four extrinsic factors favored enforcement of disclaimer of reliance); *cf. Devon Energy*, 367 S.W.3d at 384–85 (declining to enforce disclaimer under totality of circumstances where factors favoring enforcement addressed policy concern that parties be able to understand terms, but no factor that addressed party's ability to alter terms favored enforcement). Accordingly, the trial court did not err in granting summary judgment in favor of Firstmark on Newman's counterclaims for fraud in the inducement and fraud by nondisclosure.

### Declaratory Judgment

Newman sought a declaration that "the Guaranty is void and that his obligations were released due to Firstmark's actions." *See* Tex. Civ. Prac. & Rem. Code § 37.004(a) (person interested under written contract may have determined question of construction or validity arising under contract). On appeal, Newman states that his "right to remand on his derivative claim for declaratory relief is contingent on prevailing on an issue above." Having determined that Newman does not prevail on any of the issues discussed above, we further conclude that the trial court did not err in granting summary judgment in favor of Firstmark on Newman's counterclaim for declaratory relief, which raised the same issues addressed by the parties' other claims. *See Universal Printing Co. v. Premier Victorian Homes, Inc.*, 73 SW.3d 283, 296 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("There is no basis for declaratory relief when a party is seeking in the same action a

different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy."). We overrule Newman's sixth issue.[9]

## CONCLUSION

Having overruled Newman's issues, we affirm the trial court's summary judgment in favor of Firstmark.

_____
Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Affirmed

Filed:   August 21, 2015

---

[9] In his first issue, Newman asserts generally that the trial court erred in granting summary judgment in favor of Firstmark.  Because that argument is subsumed in issues four through six, we overrule Newman's first issue.

20