**Affirmed and Opinion Filed December 7, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00260-CV

### GRAPEVINE DIAMOND, L.P., JONATHAN AFLATOUNI,
### and YOUVAL ZIVE, Appellants
### V.
### CITY BANK, Appellee

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-01876-2010**

## MEMORANDUM OPINION

Before Justices Bridges, Myers, and Whitehill
Opinion by Justice Whitehill

On the Court's own motion, we withdraw our opinion dated November 10, 2015 and vacate the judgment of that date. This is now the Court's opinion.

In this post-foreclosure deficiency suit, a second lienholder and guarantor challenge a foreclosure sale by the first lien holder. The main areas of controversy include whether (1) the first lien holder conclusively established its right to enforce the underlying notes and guaranties despite an alleged name discrepancy between the loan documents and pleadings, (2) alleged irregularities in the foreclosure sale defeated the first lien holder's summary judgment motion, and (3) the sale is void because it violated the automatic stay in the second lienholder's bankruptcy case.

More specifically, appellee City Bank loaned appellant Grapevine Diamond L.P. money to purchase real property in Grapevine, Texas from appellant Jonathan Aflatouni. Appellant Youval Zive guaranteed the debt, and Aflatouni retained a second lien.

After Grapevine Diamond defaulted, City Bank foreclosed and sued Zive on his guaranty for the deficiency. Subsequent third-party defendants Grapevine Diamond and Aflatouni asserted cross-claims against City Bank for wrongful foreclosure. The parties filed cross-motions for summary judgment. The trial court ultimately denied appellants' motions, granted City Bank's motions, and rendered judgment for City Bank.

Appellants present twenty-two issues that challenge:

(1) City Bank's capacity to sue (Grapevine Diamond/Aflatouni[1] Issues 1, 8, 11, 12, 13; Zive Issue 2);

(2) the adequacy of City Bank's summary judgment motion and pleadings (Grapevine Diamond/Aflatouni Issues 9 and 10);

(3) the foreclosure sale, alleging violation of a bankruptcy stay and other irregularities (Grapevine Diamond/Aflatouni Issues 2, 3, 4, 5, 6; Zive Issues 1.d, 1.e, 3.c);

(4) the guarantor's liability, alleging release and novation (Zive Issues 3.a, 3.b);

(5) the exclusion of expert and fact witness testimony on the property's value (Grapevine Diamond/Aflatouni Issues 14, 15, 16, 17; Zive Issues 1.a, 1.b, 1.c); and

(6) failure to award their damages and attorney's fees (Grapevine Diamond/Aflatouni Issues 7, 18, 19).

For the reasons discussed below, we resolve appellants' issues against them and affirm the judgment.

## I. BACKGROUND

On September 10, 2007, appellant Grapevine Diamond borrowed $6,375,000 from appellee City Bank, executing a promissory note and first lien deed of trust covering the property

---

[1] Grapevine Diamond and Aflatouni are represented by the same counsel on appeal and filed a joint brief.

mentioned below. Appellant Youval Zive guaranteed the indebtedness, executing a guaranty agreement on the same date. Using the loan proceeds, Grapevine Diamond purchased approximately ten acres of vacant land in Grapevine, Texas from Aflatouni and his wife.

Under a promissory note dated July 29, 2009, Grapevine Diamond borrowed an additional $150,000 from City Bank. The parties also signed loan modification agreements in 2008 and 2009. Zive signed the 2009 modification agreement as president of Grapevine Diamond's general partner and also as a guarantor.

Grapevine Diamond defaulted on both notes, and on April 5, 2010, it filed a bankruptcy petition that Zive signed on Grapevine Diamond's behalf under the penalty of perjury. On its related Schedule A (Debtor's Real Property), Grapevine Diamond listed the property at issue as an asset valued at $2,000,000.00 with a $7,000,000.00 corresponding "Amount of Secured Claim."

Correspondingly, Grapevine Diamond's Schedule D (Creditors Holding Secured Claims) listed City Bank as a creditor with a deed of trust. The related collateral is described as "raw land" worth $2,000,00.00. In the column titled "Amount of Claim Without Deducting Value of Collateral," Grapevine Diamond stated that it owed City Bank $7,000,000.00, with an "unsecured portion" of $5,000,000.00.

And Grapevine Diamond's Schedule F (Creditors Holding Unsecured Nonpriority Claims) listed Aflatouni as an unsecured creditor with a $3,500,000.00 claim.

On November 22, 2010, the bankruptcy court entered an "Order on City Bank's Motion for Relief from the Automatic Stay" in Grapevine Diamond's bankruptcy case. In that order, the court found that (1) the balance due to City Bank was $6,732,506.86, secured by a first lien deed of trust; (2) "the value of the collateral alone is insufficient to provide City Bank with adequate protection"; and (3) Grapevine Diamond "has no equity" in the collateral.

–3–

At a subsequent foreclosure sale, Aflatouni bid $3,000,000 for the property "on behalf of a client" but could not obtain cash for the purchase price. City Bank then purchased the property for $3,000,000.00.

Aflatouni filed bankruptcy petitions on December 6, 2010 (under Chapter 13 of the United States Bankruptcy Code) and January 31, 2011 (under Chapter 11). The Chapter 13 case was dismissed on January 14, 2011 because Aflatouni failed to file required documentation, including schedules. The Chapter 11 case was dismissed with prejudice on May 16, 2011. The bankruptcy automatic stay in Aflatouni's Chapter 13 case was in effect when the foreclosure sale occurred.

City Bank sued Zive and another guarantor, Nasser Shafipour, on their guaranties of Grapevine Diamond's indebtedness. Shafipour asserted third-party claims against Grapevine Diamond and Aflatouni, who in turn asserted cross-claims against City Bank for wrongful foreclosure, breach of contract, and several other causes of action regarding title to the property.[2] All parties sought summary judgment on their affirmative claims and defenses. The trial court denied appellants' motions and granted City Bank's. This appeal followed.

## II. ANALYSIS

### A. Standards of review.

We review a summary judgment de novo. *Mid-Century Ins. Co. of Texas v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2003). When both parties move for summary judgment and the trial court grants one motion and denies the other, we determine all questions presented and render the judgment the trial court should have rendered. *Id.*

We review a trial court's evidentiary rulings for abuse of discretion. *Estate of Finney*, 424 S.W.3d 608, 612 (Tex. Civ. App.—Dallas 2013, no pet.). We will not reverse a judgment on

---

[2] Shafipour was later dismissed from this suit and is not a party to this appeal.

an evidentiary ruling unless the appellant establishes that (1) the trial court's ruling was in error and (2) the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Id.* (citing *McCraw v. Maris,* 828 S.W.2d 756, 757 (Tex. 1992)). When reviewing whether evidence was properly admitted or excluded, we must review the entire record. *Id.* (citing *State v. Central Expressway Sign Assocs.,* 302 S.W.3d 866, 870 (Tex. 2009)).

**B.      Was City Bank the payee on the notes and a party to the deeds of trust and guaranties?**

Appellants contend that City Bank did not own or hold the promissory notes and is not a party to the deeds of trust or the guaranties, and therefore was not authorized to foreclose on the property or enforce the guaranties. They instead argue that the counter-party to those documents is "City Bank, Texas," rather than "City Bank," the plaintiff and cross-defendant in this suit. Appellants also contend that City Bank never filed documents with the Texas Secretary of State to create an assumed name and may not now assert that it is the same entity as "City Bank, Texas." *See* TEX. BUS. & COM. CODE ANN. § 71.101 (West 2015) (entity must file certificate if it regularly conducts business in Texas under an assumed name).

Failure to file an assumed name certificate concerns the plaintiff's capacity to sue. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 55–56 (Tex. 2003). As such, the defendant must file a verified plea challenging the plaintiff's capacity. TEX. R. CIV. P. 93.1 (pleading that plaintiff lacks legal capacity to sue must be verified). The plaintiff must then prove that it is entitled to recover in the capacity in which it sued. *JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II*, No. 02-11-00373-CV, 2014 WL 7473779, at *6 (Tex. App.—Fort Worth Dec. 31, 2014, no pet.).[3] City Bank met this burden.

---

[3] The appeal was later dismissed pursuant to settlement, but the court denied the motion to withdraw its opinion. *JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II*, No. 02-11-00373, 2015 WL 1119894, at *1 (Tex. App.—Fort Worth Mar. 12, 2015, no pet.) (mem. op.).

Here, the record reflects that in 2009 appellants signed a loan modification agreement affirming their obligations to "City Bank, a Texas banking association (Lender)" under the notes, deeds of trust, and guaranties. This loan modification agreement identifies Grapevine Diamond as "Borrower" and Zive as one of the "Guarantors." The loan modification agreement also describes the promissory notes, deeds of trust, and guaranties by date, amount, deed record reference, and property description. Appellants likewise confirmed the outstanding note balances. The agreement further provides, "Borrower and Guarantors hereby confirm and agree such sums are due and owing to Lender without defense, counterclaim, or offset according to the modified payment schedule, interest rate and other terms set forth herein." This loan modification agreement was in City Bank's summary judgment evidence as Exhibit A-4 to the Affidavit of Morris Wilcox.[4] Appellants did not contest this agreement, which recites that "City Bank" is the lender and mortgagee.

In addition, the summary judgment evidence included the bankruptcy court's November 22, 2010 order granting the motion of "City Bank" to lift the automatic stay as to the collateral under the notes and deed of trust, and authorizing "City Bank" to "exercise any and all remedies afforded it pursuant to the terms of its loan documentation." And City Bank's summary judgment filings also included affidavit testimony that City Bank was the owner and holder of the notes and a party to the guaranties. The trial court could rely on all of this this evidence in

---

[4] Relying on *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984), appellants challenge Wilcox's affidavit as hearsay and violating the best evidence rule. Their argument rests on the premise that the affidavit testimony (stating that "City Bank" is the lender) conflicts with the note itself (stating that "City Bank, Texas" is the lender). Unlike in *Mercer*, Wilcox's affidavit is not "limited to a legal conclusion . . . and an alleged copy of a note." *Id.* The court in *Mercer* distinguished cases where, as here, the sworn copies of the notes "were, indeed, copies of originals complete with signatures." *See id.* Especially in light of the additional summary judgment evidence that appellants confirmed their indebtedness to "City Bank" in the loan modification documents, we reject appellants' hearsay and best evidence arguments.

Appellants also challenge Wilcox's testimony of the property's post-foreclosure sales price, again citing *Mercer*. Even if considering this testimony was error, it did not cause the rendition of an improper judgment because the post-foreclosure price of the property was not relevant to any issue presented in City Bank's summary judgment motion. *See* TEX. R. APP. P. 44.1(a) (no judgment may be reversed on appeal for error of law unless court of appeals concludes error probably caused rendition of improper judgment).

rejecting appellants' argument that City Bank was not the proper party to enforce appellants' obligations under the loan documents.

Moreover, appellants provided no evidence raising a fact issue regarding whether City Bank was doing business under an assumed name. *See Sibley*, 111 S.W.3d at 52 (whether partnership did business under assumed name was fact question for trial court). The only support appellants cite for their argument is that some of the operative documents in this case recite the lender's name as "City Bank, Texas." There was, however, no evidence that City Bank "regularly conducts business or renders professional services in this state under an assumed name," and was therefore required to file an assumed name certificate. *See* TEX. BUS. & COM. CODE ANN. § 71.101(1).

Further, Zive's own summary judgment response negates appellants' argument that City Bank sued under an assumed name and was therefore required by business and commerce code § 71.101 to file an assumed name certificate. For example, Zive's response includes a request for judicial notice of a reference from the Texas Secretary of State's website "showing that City Bank, a Texas state bank, has not filed the documentation with the Texas Secretary of State's office to create an assumed name." The record thus establishes that City Bank did not sue under an assumed name.

For the above reasons, the summary judgment evidence conclusively established that City Bank was entitled to enforce the notes and guaranties. We thus overrule Grapevine Diamond and Aflatouni's first, eighth, eleventh, twelfth, and thirteenth issues, and Zive's second issue.

**C.      Was the Bank's no-evidence summary judgment motion sufficient to challenge appellants' trespass to try title, breach of contract, and suit to quiet title claims?**

Appellants complain that City Bank's summary judgment motion was insufficient to challenge their trespass to try title, breach of contract, and suit to quiet or remove cloud on title

claims because City Bank attacked only one element of these causes of action and not all of their elements. We disagree.

City Bank was not required to allege that there was no evidence on every element of appellants' causes of action to prevail on its no-evidence summary judgment motion. Defeating one element of each claim suffices. Rule 166a(i) itself provides that a movant may seek summary judgment "on the ground that there is no evidence of *one* or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i) (emphasis added). "The motion must state the elements as to which there is no evidence." *Id.*

And, as we explained in *Nelson v. Regions Mortgage, Inc.*, the rule allows the movant to identify "whatever elements he believes are unsupported by evidence; it imposes no restrictions on the number of challenges that may be made." 170 S.W.3d 858, 861 (Tex. App.—Dallas 2005, no pet.); *see also Timpte Indus. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009) (motion specifying two elements of products liability claim was sufficient).

Here, City Bank's motion listed all of the elements for each cause of action, and then identified one or more specific elements on which it argued that there was no evidence. Specifically,

> (1)    for appellants' trespass to try title claim, City Bank challenged the element of superior title from a common source, *see Wilhoite v. Sims*, 401 S.W.3d 752, 760 (Tex. App.—Dallas 2013, no pet.) (listing "superior title out of a common source" as one of four elements of trespass to try title claim);
>
> (2)    for appellants' breach of contract claim, City Bank challenged the elements of an existing enforceable contract (as to Aflatouni) and breach (as to Grapevine Diamond), *see Petras v. Criswell*, 248 S.W.3d 471, 477 (Tex. App.—Dallas 2008,

–8–

no pet.) (successful breach of contract claim requires proof of four elements including valid contract and breach); and

(3)     for appellants' claim to quiet or remove cloud on title, City Bank challenged the element that its claim on the property is invalid or unenforceable, *see Montenegro v. Ocwen Loan Servicing, LLC*, 419 S.W.3d 561, 572 (Tex. App.—Amarillo 2013, pet. denied) (to state claim to quiet title, plaintiff must establish that challenged claim to property is invalid or unenforceable).

City Bank's summary judgment motion was thus sufficient to support the trial court's judgment on appellants' claims for trespass to try title, breach of contract, and to quiet or remove a cloud on title. Accordingly, we overrule Grapevine Diamond and Aflatouni's ninth issue.

**D.     Did the trial court err by overruling appellants' objection to City Bank's pleadings because City Bank did not plead the affirmative defenses of proportionate responsibility, failure to mitigate, and offset?**

Appellants contend that City Bank may not assert any new affirmative defenses "in the event there is a remand." They argue that the trial court erroneously overruled their objections to City Bank's failure to plead the proportionate responsibility, failure to mitigate, and offset defenses. But City Bank did not seek summary judgment on these defenses; the trial court's judgment does not include any ruling on them; and no remand is required. Appellants' issue does not present any error for our review. *See* TEX. R. APP. P. 44.1(a) (for reversal on appeal, court of appeals must conclude error probably caused rendition of improper judgment). We thus overrule Grapevine Diamond and Aflatouni's tenth issue.

**E.     Did an alleged violation of the automatic stay in Aflatouni's bankruptcy case require a different result?**

Aflatouni and Grapevine Diamond both urge that City Bank's foreclosure sale violated the automatic stay in Aflatouni's Chapter 13 bankruptcy case. They rely on the settlement statement executed by Grapevine Diamond reflecting the amount of $2,741,760.51 identified as

"Seller's Purchase into Grapevine Diamond" to support their argument that Aflatouni retained a vendor's lien when he sold the property to Grapevine Diamond. (Grapevine Diamond, however, listed Aflatouni as only an unsecured creditor.) They also argue that City Bank does not dispute that Aflatouni loaned $2.7 million to Grapevine Diamond when he sold the property in 2007. But they admit that his vendor's lien was subordinate to City Bank's first lien.[5]

Grapevine Diamond further contends that it has standing to challenge City Bank's alleged violation of the stay in Aflatouni's bankruptcy because it was an Aflatouni creditor based on promises Aflatouni made in the 2009 loan modification.

Next, Aflatouni and Grapevine Diamond rely on *In re Three Strokes Limited Partnership, Debtor*, 397 B.R. 804, 807 (Bankr. N.D. Tex. 2008) to support their automatic stay violation argument. In that case, the court held that the debtor's second lien interest in property was "a property interest that triggers the protection of the automatic stay," even though the underlying property was not property of the debtor's estate, because foreclosure proceedings "could have the effect of extinguishing the Debtor's second lien interest." *Id.* The court thus concluded that, based on the facts in that case, the debtor held "a cognizable property interest . . . that the automatic stay protects." *Id.* at 808. Based on this language from *Three Strokes*, Aflatouni and Grapevine Diamond posit that Aflatouni's alleged second lien was a property interest protected by the automatic stay in his bankruptcy case.

The *Three Strokes* court, however, focused on a significant nuance in that fact pattern not present here—whether an intercreditor subordination agreement created a waiver or relinquishment of the debtor's property rights such that the debtor had "no meaningful property interests left." *Id.* at 808-809. The court further stated that:

---

[5] Grapevine Diamond contends that it has standing to challenge City Bank's alleged violation of the stay in Aflatouni's bankruptcy because it was an Aflatouni creditor based on promises Aflatouni made in the 2009 loan modification.

[T]his does not mean that the [d]ebtor has no property right here at all worthy of protection. The subordination agreement certainly dilutes or weakens the [d]ebtor's bundle of rights associated with the second lien. But it does not extinguish the property rights altogether.

*Id.* at 809. Thus, in *Three Strokes*, there was at least a possibility of value in the property.

The summary judgment record in the present case, however, establishes that there was no such possibility here. That is so because it was judicially established in the bankruptcy court that there was no equity in the property. Accordingly, there was nothing for Aflatouni's alleged lien to attach to at the time of the sale. Or, in the words of *Three Strokes*, the record conclusively establishes that there was "no meaningful property interest left" for Aflatouni, who thus had "no property right here worthy of protection."

Specifically, when Aflatouni filed his December 6, 2010 Chapter 13 petition, the bankruptcy court had already ruled, in Grapevine Diamond's bankruptcy proceeding, that there was insufficient value in the collateral "to provide City Bank with adequate protection" on its first lien. The bankruptcy court also found that Grapevine Diamond had no equity in the collateral.

These findings were consistent with the amounts stated on Grapevine Diamond's own bankruptcy schedules for the value of its interest in the property, the amount of City Bank's secured claim, and Aflatouni's unsecured creditor listing. Furthermore, the bankruptcy court's order specifically permitted City Bank to "exercise any and all remedies" permitted under its loan documents, including foreclosure sale.

Notwithstanding the above, as a Grapevine Diamond creditor, Aflatouni could have challenged both City Bank's motion to lift the stay and the bankruptcy court's order lifting the stay. Grapevine Diamond itself could have appealed the order. *See Mitchell v. Fort Davis State Bank*, 243 S.W.3d 117, 124 (Tex. App.—El Paso 2007, no pet.) (bankruptcy court's order

–11–

granting relief from automatic stay is final and appealable order) (citing *In re Chunn*, 106 F.3d 1239, 1242 (5th Cir. 1997)). Yet neither Aflatouni nor Grapevine Diamond took any such actions.

Moreover, as discussed below, appellants still had no summary judgment evidence that the property's value exceeded the amount stated on Grapevine Diamond's bankruptcy schedules, and the property was sold for less than the amount of City Bank's secured claim.

Accordingly, based on the specific facts before us, we overrule the portions of Grapevine Diamond and Aflatouni's second, fourth, fifth, and sixth issues alleging that summary judgment for City Bank was improper because the foreclosure sale allegedly violated the stay in Aflatouni's bankruptcy.

**F.      Was the foreclosure sale invalid because of irregularities?**

Appellants argue that there were two irregularities in the foreclosure sale itself that injured them by reducing the price:  (1) the bidding was interrupted three times when Jim Goldston, who represented City Bank at the sale, received telephone calls, and (2) the sale was not readvertised after Aflatouni was unable to obtain cash for his winning bid and the sale was resumed later that afternoon. We reject appellants' arguments because there is no evidence that either alleged irregularity injured any appellant.

According to Goldston and Aflatouni, who both testified about the sale in their summary judgment affidavits, Aflatouni was the apparent highest bidder for the property at $3,000,000 or $3,001,000,[6] and the substitute trustee accepted Aflatouni's bid. The sale was then temporarily suspended to allow Aflatouni to obtain cash or a cashier's check in his bid amount, as the foreclosure sale notice required.

---

[6] Goldston testified the bid was $3,001,000; Aflatouni testified it was $3,000,000.

–12–

Both witnesses also said there were other potential bidders at the sale that morning. According to Goldston, however, no other potential bidders made an offer. Although Aflatouni said that five or six people appeared to be "very interested in the sale," he did not say that any of them made an offer.

Aflatouni further said that, because of the interruptions in the sale by Goldston's telephone calls, "I felt the substitute trustee and Mr. Goldston were not trying to maximize the sales price because the interruptions discouraged bidding." He further said that no other bidders were present when the substitute trustee (consistent with the sale notice) told him that he must pay by cashier's check by 2:00, and no other bidders were present at the reconvened sale. When Aflatouni could not perform at the reconvened sale later that afternoon, City Bank credit-bid $3,000,000 and purchased the property without readvertising the sale.

Appellants cite *American Savings & Loan Ass'n of Houston v. Musick* for the applicable rule: "[t]here must be evidence of irregularity, though slight, which irregularity must have caused or contributed to cause the property to be sold for a grossly inadequate price." 531 S.W.2d 581, 587 (Tex. 1975) (citing *Sparkman v. McWhirter*, 263 S.W.2d 832, 837 (Tex. Civ. App.—Dallas 1953, writ ref'd)). "Mere inadequacy of consideration is not grounds for setting aside a trustee's sale if the sale was legally and fairly made." *Id.* And as we have explained, "[e]vidence showing that a better price would have resulted if the sale was conducted in a different manner is required." *Hunt v. Jefferson Sav. & Loan Ass'n*, 756 S.W.2d 762, 764 (Tex. App.—Dallas 1988, writ denied).

We reject appellants' arguments for several reasons:

One, as a matter of law Zive cannot prevail on a claim for wrongful foreclosure. As we discuss below, Zive waived any right to offset in the agreements he signed guaranteeing the indebtedness and may not recover damages even had he established irregularities in the sale. *See*

*Moayedi v. Interstate 35/Chisam Road, L.P.*, 438 S.W.3d 1, 8 (Tex. 2014) (right of offset is defense that can be waived).

Two, Grapevine Diamond and Aflatouni cannot prove any damage caused by any irregularities in the sale because there was no evidence that the sale's outcome would have been different but for either type of alleged irregularity. Nor was there summary judgment evidence establishing that the property's fair market value on the date of the foreclosure sale was higher than City Bank's $3,000,000 bid. Although appellants cite to the appraisals City Bank accepted at the time of the loan and modification and appraisals anticipating future development on the property, there was no evidence that these appraisals reflected the fair market value on the foreclosure sale date. And, as we discuss below, the trial court properly excluded appellants' other proffered opinions on value. Nor was there evidence that any other person would have paid any more for that property that day.

Three, we reject Grapevine Diamond's and Aflatouni's argument that, without any evidence of an adverse effect on the sale's outcome, a sale is per se invalid if it is reconvened later in the day without readvertising the sale or notifying the potential bidders who were present earlier in the day. They rely on *Mitchell v. Texas Commerce Bank—Irving*, 680 S.W.2d 681, 683 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.), and *Clearman v. Graham*, 4 S.W.2d 581, 582–83 (Tex. Civ. App.—Austin 1928, writ dism'd), to support this argument. To the extent either case purports to hold that such conduct alone warrants invalidating the sale, that rule would be inconsistent with supreme court precedents in *Musick* and *Sparkman*. *See Musick*, 531 S.W.2d at 587; *Sparkman*, 263 S.W.2d at 837 (both holding that irregularity must have caused or contributed to cause property to be sold for grossly inadequate price). Moreover, the part of *Mitchell* on which Grapevine Diamond and Aflatouni rely is dicta because the court had already completely disposed of the case based on that bank's failure to give proper notice. *See Mitchell*,

–14–

680 S.W.2d at 683. Similarly, *Clearman* was narrowly decided based on a jury finding that the creditor engaged in fraudulent conduct that kept the debtor from personally attending the sale with cash in hand, and evidence that the sale was reconvened without the presence of the person who had been declared the successful bidder earlier in the day. *See Clearman*, 4 S.W.2d at 582. Neither scenario exists here, and there is no evidence that the alleged irregularities "caused or contributed to cause" a lower sales price, let alone a grossly inadequate one. *See Musick*, 531 S.W.2d at 587.

For the above reasons, we conclude that appellants did not offer summary judgment proof that any irregularities in the foreclosure sale injured them. *See Hunt*, 756 S.W.2d at 764. We thus overrule Grapevine Diamond and Aflatouni's third, fourth, fifth, and sixth issues and Zive's issues 1.d and 3.c.

## G.    Did the 2009 loan modification release Zive from his guaranty liability?

Zive argues that the 2009 loan modification agreement and a new guaranty he signed in 2009[7] release him from liability under his 2007 guaranty. We disagree because Zive (1) agreed in 2007 to guarantee "all renewals and extensions" of the debt; (2) agreed to the loan modification and ratified his guaranty obligations in 2009; and (3) failed to establish that his 2009 guaranty in any way altered his obligations under his 2007 guaranty or the 2009 loan modification agreement.

Zive's 2007 guaranty specifically included "all obligations, indebtedness and liabilities of Borrower owed to Lender, now existing or hereafter created . . . together with any and all renewals and extensions of such indebtedness . . . ." And in the 2009 loan modification agreement, Zive "join[ed] in the execution of the foregoing Loan Modification Agreement to

---

[7] In his own summary judgment motion and in his response to City Bank's motion, Zive relies on a guaranty agreement dated March 10, 2009, that was not included in City Bank's summary judgment evidence. In his summary judgment response, Zive contended the 2009 guaranty replaced the 2007 guaranty, rendering the 2007 guaranty "ineffective."

–15–

ratify and reaffirm [his] obligations under the Guaranty Agreement[ ] previously executed by Guarantor[ ] in favor of Lender, and to ratify and reaffirm the liens of the Deed of Trust and other Loan Documents to secure the Notes as modified hereby."

Zive contends that "the 2007 documents no longer support any claims of the Bank" because "there were material changes to the overall lending arrangement" under the 2009 loan modification. He cites *Futerfas Family Partners v. Griffin* for the premise that a guarantor is discharged by a material alteration of the underlying contract that lacks the guarantor's consent and harms the guarantor. 374 S.W.3d 473, 478 (Tex. App.—Dallas 2012, no pet.). As we explained in *Futerfas*, however, to receive a discharge, the guarantor must prove, among other elements, that a material alteration to the underlying contract was made without his consent. *Id.* The summary judgment evidence here, however, established that Zive fully consented to the 2009 modification.

Specifically, the 2009 loan modification agreement Zive signed contains his consent to the 2009 loan modification agreement:

> Notwithstanding anything else herein or elsewhere, the Guaranty Agreement[ ] of Youval Zive . . . [is] hereby ratified and confirmed by Youval Zive . . . and such Guaranty Agreement[ ] continue[s] in full force and effect. . . .

> JOINDER OF GUARANTORS
> The Guarantors join in the execution of the foregoing Loan Modification Agreement to ratify and reaffirm their obligations under the Guaranty Agreements previously executed by Guarantors in favor of Lender, and to ratify and reaffirm the liens of the Deed of Trust and other Loan Documents to secure the Notes as modified hereby. Guarantors each hereby affirm, confirm, ratify, renew and extend the debts, duties, obligations, liabilities, rights, titles, security interests, liens, powers and privileges created or arising by virtue of each of their respective Guaranty Agreements, until all of the indebtedness has been paid and performed in full.

> Guarantor hereby covenants with Bank as follows:

> (a) The Loan Documents, including but not limited to those certain Guaranty Agreements dated as of September 10, 2007 and September 10,

–16–

2008, as modified hereby, are in full force and effect and there are no defenses, counterclaims, or offsets to the payment and performance of an[y] of its/their obligations in regard to the Loan, or any of the Loan Documents, as modified hereby . . . .

Additionally, the terms of Zive's guaranties control his obligations. *See Chambers v. NCNB Tex. Nat'l Bank*, 841 S.W.2d 132, 134 (Tex. App.—Houston [14th Dist.] 1992, no writ). Zive expressly ratified and reaffirmed his obligations as guarantor by joining in the loan modification agreement, agreeing that his guaranty was in full force and effect without defenses, counterclaims, or offsets, and confirming and renewing his guaranty until the debt was paid in full. We thus conclude that Zive did not present any summary judgment evidence that raised a fact issue regarding whether any material alteration was made in his guaranty obligation without his consent. *See Futerfas*, 374 S.W.3d at 478; *see also Chambers*, 841 S.W.2d at 134 (where guaranty applied to all renewals and extensions of initial loan, and expressly provided that change in debtor's status did not alter guarantor's liability, guarantor remained liable on renewal note made after debtor, originally a partnership, was incorporated).

Furthermore, even the 2009 guaranty on which Zive relies bears the same effective date as the loan modification agreement and references the same promissory note and deed of trust. Instruments concerning the same transaction may be read together even if they are executed at different times and do not reference each other. *In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010) (mandamus granted). Accordingly, under the express terms of his guaranties and the loan modification agreement, Zive remained liable for Grapevine Diamond's debts to City Bank.

In addition to his general argument that his obligations were discharged by the 2009 loan modification, Zive also contends that he has not waived the right of offset under § 51.003 of the Texas Property Code, *see* TEX. PROP. CODE ANN. § 51.003(c) (West 2014), despite the express waiver of this right in his 2007 guaranty agreement:

–17–

> Furthermore, in the event any property securing the Guaranteed Indebtedness is foreclosed upon in any manner, and a deficiency is created as a result of the purchase price at such foreclosure sale, Guarantor does hereby irrevocably waive all rights to claim any offset against the deficiency as provided in Section 51.003, 51.004 and 51.005 of the Texas Property Code, as amended.

The 2009 loan modification agreement Zive signed did not expressly reference § 51.003, but it did contain the above-quoted joinder provisions in which he agreed that "there are no defenses, counterclaims, or offsets to the payment and performance of an[y] of its/their obligations in regard to the Loan, or any of the Loan Documents, as modified hereby . . . ." These provisions were sufficient to waive Zive's right of offset under § 51.003 as well as any other defenses to his liability on the guaranty. *See Moayedi*, 438 S.W.3d at 6.

Specifically, in *Moayedi* the supreme court held that the § 51.003 right of offset is a defense that can be waived. *Id.* at 8; *see also Holmes v. Graham Mortg. Corp.*, 449 S.W.3d 257, 265 (Tex. App.—Dallas 2014, pet. denied) (discussing *Moayedi*). The *Moayedi* court concluded that a "general waiver of defenses," including words such as "any," "each," and "every," was sufficient to waive "all possible defenses." *Moayedi*, 438 S.W.3d at 8; *Holmes*, 449 S.W.3d at 265. Here, Zive agreed to "continue in full force and effect" his express waiver in the 2007 guaranty, and also agreed that "there are no defenses, counterclaims, or offsets to the payment and performance" of his obligations under his guaranty.

For the above reasons, we conclude that Zive did not establish that he was entitled to discharge of his obligations under his guaranty and that summary judgment for City Bank was proper. We thus overrule Zive's issues 3.a and 3.b.

**H.  Did the trial court abuse its discretion by excluding appellants' property value evidence?**

**1.  Blaine and Jordan**

–18–

Through their own affidavits and the appraisals of two experts, appellants sought to offer summary judgment evidence that the property's value exceeded $8,000,000. Specifically, they designated Robert Blaine and George Jordan as expert witnesses on May 10, 2013, the deadline for doing so given in the trial court's scheduling order. Each witness was designated to "provide expert opinions regarding the appraised values of the real property at issue in this case." Blaine was designated to opine on the property's value "at the time of the foreclosure sale and also as a completed project for each of the development phases." Jordan was designated to opine on the property's value "prior to the time of the foreclosure sale." The designation states that a resume and licensing information is attached for each witness. The actual substance of Blaine's and Jordan's opinions, however, was not provided. Appellants argue that because the scheduling order did not require anything other than "a designation" of their experts, their designation exceeded the scheduling order's requirements.

But the record also reflects that appellants did not disclose Blaine and Jordan in response to two prior requests for disclosure made long before the scheduling order deadline. On September 22, 2011, City Bank requested disclosures from Aflatouni "of the information or material described in" Texas Rule of Civil Procedure 194.2(a)–(*l*). City Bank made the same request of Aflatouni and Grapevine Diamond on September 13, 2012. Aflatouni and Grapevine Diamond were thus required to disclose "the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them" within thirty days after service of the request. TEX. R. CIV. P. 194.2(f)(3); 194.3. They were also required to supplement an incomplete response "reasonably promptly." TEX. R. CIV. P. 193.5; 195.6; *VingCard A.S. v. Merrimac Hosp. Sys., Inc.*, 59 S.W.3d 847, 856 (Tex. App.—Fort Worth 2001, pet. denied) (rules place affirmative obligation on responding party to disclose expert's mental

impressions and opinions and provide brief summary of basis). Appellants responded to City Bank's requests for disclosure on October 15, 2012, but did not disclose either Blaine or Jordan.

After appellants' May 2013 disclosure, City Bank again requested the information specified in rule 194 by letter on May 31, 2013. Blaine's mental impressions and opinions were finally supplied in an affidavit dated July 18, 2013. City Bank, however, had already prepared and filed its summary judgment motion two weeks earlier.

Because appellants did not timely disclose their experts in response to the disclosure requests, the trial court was required to exclude the evidence unless appellants established good cause for the failure to respond or the lack of unfair surprise or unfair prejudice to City Bank. TEX. R. CIV. P. 193.6; *VingCard*, 59 S.W.3d at 856. Appellants do not point to any showing of good cause or lack of unfair prejudice made in response to City Bank's motion to exclude Blaine's testimony for failure to timely disclose his mental impressions and opinions, or in response to City Bank's objections to Blaine's and Jordan's appraisals. Therefore, we conclude that the trial court did not abuse its discretion by excluding their opinions. TEX. R. CIV. P. 193.6.

Because we conclude that the trial court did not abuse its discretion by excluding Blaine's and Jordan's opinions for the above reasons, we need not and do not reach City Bank's argument that the trial court also properly excluded their opinions because neither witness opined regarding the property's value on the foreclosure sale date. *See generally* TEX. PROP. CODE ANN. § 51.003; *Plains Capital Bank v. Martin*, 459 S.W.3d 550, 555–58 (Tex. 2015) (discussing determination of fair market value for purposes of statutory provision on deficiency judgments).

### 2. Aflatouni and Zive as potential experts

Although Blaine and Jordan were not designated until May 2013, Aflatouni and Zive were designated as experts in October, 2012. Zive was designated to testify "as to the activities of a real estate developer and the land development process." Similarly, Aflatouni was

designated to testify "as to the activities of a real estate developer, the activities of a real estate broker, the land development process and the importance and reasonableness of the subordinated lien held by Aflatouni on this project." Neither, however, was designated to testify regarding the property's value on the foreclosure date. Absent disclosure or timely supplementation of Aflatouni's and Zive's mental impressions and opinions, the trial court did not err by excluding their "expert" opinions regarding the property's value. TEX. R. CIV. P. 195.6 (amendment and supplementation of discovery regarding experts); TEX. R. CIV. P. 193.5 (duty to amend or supplement); TEX. R. CIV. P. 193.6 (exclusion of evidence not timely disclosed in response to discovery request).

### 3. Aflatouni and Zive as lay witnesses

Aflatouni and Zive also argue that as owners of the property they were qualified as lay witnesses to testify to the property's value. Citing *Dallas County v. Crestview Corners Car Wash*, 370 S.W.3d 25, 41 (Tex. App.—Dallas 2012, pet. denied), Zive also asserts that as president of Grapevine Diamond's general partner, he is presumed to have knowledge of the property's fair market value.

When a business entity owns property, a natural person may testify as to the property's value under the property owner rule only if the person is an officer in a management position with duties in part relating to the property or an employee in a substantially equivalent position. *Reid Road Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 849 (Tex. 2011). *Reid Road*, however, further instructs that we should look at the substance of the witness's duties rather than his title or status. *Id*. at 849.

Moreover, while the "Property Owner Rule establishes that an owner is *qualified* to testify to property value," that testimony must meet the "same requirements as any other opinion evidence." *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012) (quoting

–21–

*Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984)) (emphasis original). The *Justiss* court continued,

> Because property owner testimony is the functional equivalent of expert testimony, it must be judged by the same standards. Thus, as with expert testimony, property valuations may not be based solely on a property owner's *ipse dixit.* An owner may not simply echo the phrase "market value" and state a number to substantiate his diminished value claim; he must provide the factual basis on which his opinion rests. This burden is not onerous, particularly in light of the resources available today. Evidence of price paid, nearby sales, tax valuations, appraisals, online resources, and any other relevant factors may be offered to support the claim. But the valuation must be substantiated; a naked assertion of "market value" is not enough.

*Id.* at 159. Thus, being qualified to testify about value does not equate to providing competent evidence of value.

As discussed below, assuming Zive and Aflatouni were qualified based on their status to testify about the property's value on the foreclosure date, their affidavit testimony on that issue was still legally insufficient evidence of the property's value on the foreclosure date.

Turning first to Zive, he argues that he was qualified to opine about the property's value because he was the president of Grapevine Diamond's general partner and that he had worked on the project. Assuming without deciding that he was qualified to testify on that issue, his testimony was not admissible evidence of fair market value. Specifically, Zive testified that (1) Grapevine Diamond purchased the property in 2007 for approximately $6.5 million; (2) he reviewed Jordan's 2009 appraisal report; (3) in his opinion, the fair market value of the property "would have increased in the time-period from the date of purchase to the date of the foreclosure sale"; and (4) his "conservative estimate" is that at the time of the foreclosure sale the fair market value of the property was $8,300,000.

Zive's opinion, however, was not supported with an underlying basis. Although he relied on Jordan's 2009 appraisal report, Zive provided no substantiation for his opinion that the fair

market value of the property would have increased by approximately $2 million by the 2011 foreclosure sale date. Instead, his "conservative estimate" simply offers a conclusion that is unsupported by any specific, underlying data.

Likewise, even if Aflatouni, as a Grapevine Diamond limited partner, was qualified to testify as an owner of the property (an issue we do not decide), he offered only unsupported conclusions of fair market value. His summary judgment affidavit states that he became a Grapevine Diamond limited partner on August 4, 2009. He further said that as a limited partner and as the seller of the property to Grapevine Diamond, he is familiar with the property and its value.

Although Aflatouni said that he has managerial responsibilities related to the property that include development and marketing, he does not explain what the marketing and development duties might be. He also does not state that he ever performed these functions regarding the property, particularly in connection with forming his opinion concerning the fair market value of the property.

With regard to fair market value, Aflatouni states only that he reviewed appraisal reports for 2007 and 2009 to form his opinion about the fair market value of the property in 2011. There is, however, no data or other information to connect the early values to the 2011 value. He does not explain how or why the alleged value remained constant from 2007 through 2011, or what calculations, if any, he performed to reach his conclusion concerning the 2011 value. In short, his opinion concerning the 2011 fair market value of the property is nothing more than a bare conclusion.

After reviewing the entire record, we conclude that the trial court did not abuse its discretion by excluding the testimony of Blaine, Jordan, Aflatouni, and Zive as to the property's fair market value on the foreclosure sale date. *See Estate of Finney*, 424 S.W.3d at 612. We thus

–23–

overrule Grapevine Diamond and Aflatouni's fourteenth, fifteenth, sixteenth, and seventeenth issues, and Zive's issues 1.a, 1.b., and 1.c.

**I.** **May Grapevine Diamond or Aflatouni recover damages or attorney's fees?**

Because summary judgment was proper dismissing all of Grapevine Diamond and Aflatouni's claims against City Bank, they may not recover damages, punitive damages, or attorney's fees. *See, e.g., Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982) (to recover damages for wrongful foreclosure, alleged irregularities in sale must be cause of injury to mortgagor). We thus overrule Grapevine Diamond and Aflatouni's seventh, eighteenth, and nineteenth issues.

### III. CONCLUSION

Having overruled appellants' issues, we affirm the trial court's judgment.

140260F.P05

/Bill Whitehill/
BILL WHITEHILL
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GRAPEVINE DIAMOND, L.P. , JONATHAN AFLATOUNI, and YOUVAL ZIVE, Appellants

No. 05-14-00260-CV          V.

CITY BANK, Appellee

On Appeal from the 429th Judicial District Court, Collin County, Texas
Trial Court Cause No. 429-01876-2010.
Opinion delivered by Justice Whitehill; Justices Bridges and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee City Bank recover its costs of this appeal from appellants Grapevine Diamond, L.P., Jonathan Aflatouni, and Youval Zive.


Judgment entered December 7, 2015.